## Snyder v. Brecknock Township

C.P. of Berks County, No. 09-8807

*Richard Shenkan*, for plaintiff.

*Thomas X. McAndrew, Jr.*, for defendant Brecknock Township.

*James E. Crossen, III*, defendants Fiorenzo Ferretti and Christine Ferretti.

SPRECHER, *J.*, Dec. 1, 2014—Plaintiff appeals the order dated September 16, 2014, which granted summary judgment in favor of defendants and against plaintiff. This opinion is filed pursuant to Pa. R.A.P. 1925.

## FACTS

On July 25, 2008, Robert F. Snyder (hereinafter, decedent) was operating his 1990 Ford Escort on Gouglersville Road which was owned by defendant, Brecknock Township (Township). He travelled off the road and struck an I-beam located on property owned by defendants, Fiorenzo Ferretti and his wife, Christine Ferretti (hereinafter, owners). A Township speed limit sign was attached to the I-beam at the time of the accident. Decedent's son and executor, Matthew J. Snyder (hereinafter, plaintiff), filed a wrongful death and negligence survival action against defendants. Plaintiff contends that the dual purposes of the erection and/or maintenance of the I-beam were to protect the personal and real property of the owners and to serve as the post for a traffic control device for Township.

The parties engaged in exhaustive discovery. No evidence has been produced as to why decedent drove off the road and struck the I-beam.

James Franey was the only witness to the accident.

He testified that the weather was sunny on the day of the accident. He did not observe any substances or slippery conditions on the road. Decedent passed in front of Mr. Franey who was at a stop sign on Blimline Road which intersects the Gouglersville Road. While decedent was passing him, decedent looked at Mr. Franey. Mr. Franey saw decedent impact the I-beam. Mr. Franey does not know why decedent's vehicle left the roadway and crashed into the I-beam. He did not see anything that would have caused the accident. There was no other traffic on the road. Plaintiff and other family members did not know what caused the accident.

Decedent had minimal posthumous bleeding. The coroner opines that seconds before the accident decedent had a heart attack which caused him to travel off the road.

Charles S. Kiefer serves as Township's road master. He has worked on the road crew or as master since 2005. He was not aware of any accidents involving the I-beam prior to 2008. He also did not know about any complaints to Township regarding the subject I-beam. He confirmed by taking a measurement that the I-beam was located in Township's right-of-way.

Harry T. Martin, Jr., a former employee of Township, testified that he had been employed full-time on the Township's road crew from 2005 through 2010. He also was not aware of any accidents involving the I-beam prior to the Snyder accident. He did not know of any complaints to the road crew about the I-beam prior to the instant accident. He knew that the I-beam was positioned

in owners' front yard prior to decedent's accident, but he had not viewed the I-beam as a problem.

Decedent resided in his Mohnton, Pennsylvania residence, which was approximately one mile from the accident site, for about fourteen years before his death. He was sixty years old when he died. He was disabled with multiple sclerosis, but he was able to drive a car.

Township contends that it did not cause the accident, and plaintiff has failed to produce any evidence that it did. Township denies that it committed any acts or omissions that caused decedent's death. Owners also deny causation. Causation is a necessary element in both wrongful death and negligence survival actions.

Owners also submit that they did not breach any duty owed to decedent and that they are not liable for the happening of the accident. They maintain that they could not have taken any action with respect to the I-beam which posted the lawfully erected Township speed limit signs since the destruction, removal or injury of the sign would have constituted a summary offense under the Second Class Township Code, 53 P.S. § 67323.

Plaintiff's accident reconstruction expert, Kevin E. O'Connor, P.E., submitted a report. He wrote that sight distances for drivers stopped on Blimline Road looking to the left are limited by trees and brush growing on the southwest corner of the intersection and by the profile of Gouglersville Road west of Blimline Road. The roadway on Gouglersville Road consisted of worn asphalt. There

was loose gravel on portions of the pavement surface, particularly along the south edge of Gouglersville Road at the intersection of Blimline Road. Mr. O'Connor opined that an application of the vehicle's brakes could have resulted in a skid due to friction differences between the tires on the clean surface and tires on the graveled covered surface. There were no signs warning eastbound drivers of the existence of the curve or the intersection with Blimline Road at the accident site.

The I-beam had been in the same location since the owners had moved into their residence. Mrs. Ferretti's uncle had installed it, presumably to deter vehicles from entering his lawn and destroying it and his shrubs. Owners have maintained the I-beam. After the accident, Township removed the speed limit sign from the I-beam. Mr. O'Connor believed that action should have been taken to eliminate or to make the I-beam safer to hit because it was in the clear zone.

Two police reports noted that owners' property was the site of two prior vehicular accidents in 2003 and 2004. Both drivers in those accidents lost control of their vehicles. In the 2004 accident, a woman lost control of her vehicle because she had continued to drive after the tire had come off and the rim had been exposed. There were possibly three other accidents involving the I-beam.

Based on this record, this court granted summary judgment for all defendants. Plaintiff filed a timely appeal.

## ISSUES

Plaintiff raises the following issues in his concise statement of errors complained of on appeal.

1. Whether this court's decision to grant summary judgment to defendants was in error, when there was sufficient evidence to create a genuine issue of material fact regarding defendants' negligence, the determination of which should have been submitted to the trier of fact.

2. Whether this court's decision to strike plaintiff's punitive damages was erroneous.

3. Whether this court erred by denying plaintiff's request to conduct a subterranean inspection to determine whether the subject cement I-beam was attached to the owners' cement wall.

## DISCUSSION

Plaintiff's first issue is that summary judgment was in error because there was sufficient evidence to create a genuine issue of material fact regarding defendants' negligence. This issue is without merit.

A defendant may establish a right to summary judgment by demonstrating the plaintiff's inability to show an element essential to his claim. If the plaintiff fails to contravene the defendant's claim with evidence raising a factual dispute as to the element, the defendant is entitled to entry of judgment as a matter of law. *Pappas v. UNUM Life Insurance Company of America*, 856 A.2d 183 (Pa. Super. 2004). In the case *sub judice*, this court determined that plaintiff's inability to show the reason for decedent's

leaving the roadway was an essential element missing from his claims.

The elements necessary to state a cause of action in negligence are as follows: (1) a duty on the part of the defendant to conform to a certain standard of conduct relative to the plaintiff; (2) defendant's failure to so conform; and (3) a reasonably close causal connection between the defendant's conduct and some resulting injury to the plaintiff. Where insufficient evidence exists to justify an inference of negligence and causation, the trial court may properly grant summary judgment in favor of the party against whom liability is sought. *Caldwell v. Department of Transportation*, 120 Pa. Cmwlth. 358, 524 A.2d 1284 (1988).

In similar cases where the drivers have left the roadway for no apparent reasons and have struck objects, such as fence posts and logs, the appellate courts have affirmed summary judgments against the plaintiffs because they reasoned that the accidents were caused by the vehicles leaving the roadway and not by the objects which they hit after leaving the roadway. The Superior Court in *Saylor v. Green*, 165 Pa. Cmwlth. 318 (1994) held that the trial court could have properly concluded that the property owners could not have foreseen that the driver would inexplicably lose control of his vehicle and strike a pole.

Furthermore, the *Saylor* court held that information regarding prior accidents which occurred at the site where the motorcycle left the road and struck a pole would not have been admissible in the motorcyclist's negligence suit,

given the motorcyclist's admission that he did not know the circumstances regarding his accident; the motorcyclist could not identify the reason his vehicle left the roadway and struck a pole. Likewise, in the case *sub judice*, this court would not have admitted evidence of prior motor vehicle accidents involving the I-beam. It is reversible error to introduce evidence of motor vehicle accidents where the conditions and circumstances are different from the accident in question, and plaintiff does not know the circumstances regarding decedent's accident.

Plaintiff's accident reconstruction expert gave his *opinion* as to why decedent drove off the roadway. There is another expert opinion which suggests that decedent had a heart attack immediately prior to his accident. For approximately fourteen years, decedent lived approximately one mile from the accident site. Presumably, he was familiar with the road. Decedent's reason for leaving the roadway is unknown, and a jury would not have been allowed to speculate about the cause.

Plaintiff next submits that it was error for this court to strike plaintiff's punitive damages claim. This issue is without merit.

Punitive damages may be rewarded for conduct that is outrageous, because of defendant's evil motive or his reckless indifference to the rights of others. Punitive damages are penal in nature and are proper only in cases where defendant's actions are willful, wanton, or reckless conduct. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from

similar conduct. A punitive damages claim must be supported by evidence sufficient to establish that (1) defendant had a subjective appreciation of the risk of harm to which plaintiff was exposed, and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Hutchinson v. Luddy*, 582 Pa. 114, 870 A.2d 766 (2004).

In the case *sub judice*, this court believed that at the preliminary objection stage, there was not sufficient evidence to support punitive damages claims, so it sustained the preliminary objections to the punitive damages. It did not sustain the preliminary objections with prejudice. If during a trial, the evidence would have met the heavy burden that is necessary to prove punitive damages, this court would have permitted the issue of punitive damages to be considered by the jury.

Plaintiff's third issue is that this court erred by denying plaintiff's request to conduct a subterranean inspection to determine if the subject I-beam was attached to owners' cement wall. This issue is without merit. This court granted summary judgment in favor of defendants and against plaintiff; thus, this issue was moot. Assuming *arguendo* that it had not been moot, it still should have been denied. Plaintiff hit the I-beam. It is immaterial if the I-beam was attached to a wall or was free-standing. The issue has always been the placement of the I-beam, not its construction.

In accordance with the foregoing opinion, this court submits that plaintiff's appeal should be denied and the summary judgment affirmed.